Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES KING,

        Plaintiff

v.

THE UNITED STATES OF AMERICA,
et al.,

        Defendants

Case No. 1:16-cv-00343

Honorable Janet T. Neff

_____/

## DECLARATION OF SEAN P. BURNS

    I, Sean P. Burns, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.    I am a Special Agent of the Federal Bureau of Investigation (the "FBI"). I entered on duty as an FBI Special Agent in 1991. Since 2001, I have been assigned to the Grand Rapids Resident Agency (the "GRRA"), which is part of the FBI's Detroit Division. Since December 2012, I have served as the Supervisory Senior Resident Agent (the "SSRA") of the GRRA, which gives me supervisory responsibility over all personnel and activities of the GRRA. This declaration is based on personal knowledge and on information provided to me in my official capacity as SSRA of the GRRA.

    2.    I am aware that the above-captioned lawsuit concerns a July 18, 2014 incident involving Plaintiff James King and Defendants Douglas Brownback and Todd Allen. Douglas Brownback is, and was on July 18, 2014, an FBI Special Agent assigned full-time to the FBI's Grand Rapids Resident Agency Violent Crimes/Fugitive Safe Streets Task Force (the "SSTF"). Todd Allen is, and was on July 18, 2014, a federally-deputized Task Force Officer ("TFO")

1

assigned full-time to the SSTF. The FBI provides TFO Allen with office space, a cellular telephone, a radio, a vehicle, and other law-enforcement equipment and resources.

3.     Attached hereto as Exhibit 1 is a true and correct copy of the Form USM-3B Special Deputation Oath of Office, Authorization and Appointment, showing that on February 24, 2014, TFO Todd Allen was appointed as a Special Deputy U.S. Marshal, with the sponsorship of the FBI. By its terms, the Special Deputation Appointment authorized TFO Allen to, among other things, "seek and execute arrest and search warrants supporting a federal [Task Force] under Title 18 authority." That deputation expired on February 29, 2016, and has since been renewed.

4.     Attached hereto as Exhibit 2 is a true and correct copy of the June 2013 Memorandum of Understanding (the "MOU") between the FBI and the Grand Rapids Police Department regarding the SSTF. As stated in the MOU, the mission of the SSTF included "the apprehension of dangerous fugitives where there is or may be a federal investigative interest," MOU at ¶ 4. The SSTF was supervised by the FBI and the FBI supervisor was responsible for opening, monitoring, directing and closing SSTF investigations. See MOU at ¶¶ 6 and 11. TFO Allen served on the SSTF pursuant to the MOU.

5.     I am aware that the complaint in the above-captioned matter alleges that the July 18, 2014 incident involving Mr. King occurred while SA Brownback and TFO Allen were looking for a fugitive named Aaron Davison, who was the subject of a state court warrant. Under the Fugitive Felon Act, 18 U.S.C. § 1073, it is a federal crime to flee a state to avoid prosecution for a state felony, and the FBI has authority to investigate potential violations of 18 U.S.C. § 1073. As the SSRA of the GRRA, I have supervisory responsibility over the SSTF, and I had approved the opening of the SSTF's investigation into the fugitive Aaron Davison. The

2

SSTF's investigation was opened in an effort to determine whether there was probable cause to

believe that Davison had left the State of Michigan.  Thus, at the time of the July 18, 2014

incident, SA Brownback and TFO Allen were federal officers on an FBI Task Force working on

a federal investigation.


Executed on  *14 NOV*_____, 2016

Sean P. Burns
Supervisory Senior Resident Agent
Grand Rapids Resident Agency
Detroit Division, FBI

3

Exhibit 1

**U.S. Department of Justice**
United States Marshals Service



# Special Deputation Oath of Office, Authorization and Appointment

This form must be completed after an application for Special Deputation (Form USM-3A) has been submitted to, and approved by, the Chief of the Special Deputation Unit, Office of Security Programs, Tactical Operations Division. Return this form to the Special Deputation Unit at spec.dep@usdoj.gov after completion.

## OATH OF OFFICE

I, __TODD P. ALLEN__ _____ (*Use name as stated on application*) do solemnly swear (affirm) that I will faithfully execute all lawful orders issued under the authority of the United States directed to the United States Marshal, the United States Marshals Service, or to an appropriate Federal Official. I will perform the duties of a Special Deputy United States Marshal with integrity, professionalism, and impartiality. I will exercise the authorities as limited by this Special Deputation solely in furtherance of the mission for which I have been specially deputized, and only while this Special Deputation shall be in effect. I agree to abide by the conditions set forth in the appointment. So help me God.

Subscribed and sworn to me this __11TH__ day of __MARCH__ __2014__ at __GRAND RAPIDS__, __MICHIGAN__
                                                   City              State

X _____    PETER C. MUNOZ, UNITED STATES MARSHAL
Signature of Appointee            Signature of U.S. Marshal or Officer Administering Oath

02/29/2016                      W/MI
Expiration Date                 District or Division

## SPONSORING AGENCY INFORMATION

GRAND RAPIDS POLICE DEPARTMENT      FEDERAL BUREAU OF INVESTIGATION
Appointee's Employer                        Sponsoring Agency

1 MONROE CENTER NW, GRAND RAPIDS, MI 49503    LYNN M. DEVOS - ▮▮▮▮4261
Employer's Address                        Sponsoring Agency Contact Name and Phone No. during Special Deputation (U.S. Marshal or Designated Federal Official)

### TERMS OF SPECIAL DEPUTATION

The individual named herein is appointed, under authority delegated by the Attorney General, to perform the duties of the Office of Special Deputy United States Marshal as directed by an appropriate official of the United States Marshals Service or some other appropriate Federal Official as so designated. This appointment does not constitute employment by the United States Marshals Service, the United States Department of Justice, or the United States Government. The appointee agrees to perform the duties required under this Special Deputation with the knowledge that he or she is neither entering into an employment agreement with the Federal Government or any element thereof, nor being appointed to any position in the Federal Service by virtue of this special deputation. The appointee understands and acknowledges that the authorities vested in him or her by this special deputation can only be exercised in furtherance of the mission for which he or she has been specially deputized and extend only so far as may be necessary to faithfully complete that mission. Moreover, those authorities terminate at the expiration of the term of the Special Deputation.

*For verification, contact*
*United States Marshals Service Comm Center*
*(202) 307-9100.*

USM-3 ID: 137759

### SPECIAL DEPUTATION APPOINTMENT

This certifies that

**TODD P. ALLEN**
**GRAND RAPIDS VIOLENT CRIME FUGITIVE TF**

has been specially appointed as a Special Deputy U.S. Marshal to perform the following duties as authorized by law:

* TO SEEK AND EXECUTE ARREST AND SEARCH WARRANTS SUPPORTING A FEDERAL TF UNDER TITLE 18 AUTHORITY
* TO MONITOR TITLE III INTERCEPTS

This deputation has the following limitations:

* NOT AUTHORIZED TO PARTICIPATE IN FEDERAL DRUG INVESTIGATIONS UNLESS DEPUTIZED BY DEA OR FBI
* NOT VALID OFF DUTY

X _____    02/29/2016
Appointee             Expiration Date

KAREN BROWN    PETER C. MUNOZ, USM
Chief, Special Deputation Unit    U.S. Marshal or Designated Federal Official

02/24/2014
Authorization Date

Form USM-3B
Est. 06/11
(Previously Form USM-3)

SUBJECT TO PROTECTIVE ORDER

KING-000257

Exhibit 2

FOR OFFICIAL USE ONLY

# FEDERAL BUREAU OF INVESTIGATION
# GRAND RAPIDS RESIDENT AGENCY VIOLENT CRIMES/FUGITIVE SAFE STREETS TASK FORCE
# MEMORANDUM OF UNDERSTANDING

## PARTIES

1. This Memorandum of Understanding (MOU) is entered into by and between the Federal Bureau of Investigation (FBI) and the Grand Rapids Police Department (GRPD). Nothing in this MOU should be construed as limiting or impeding the basic spirit of cooperation which exists between these agencies.

## AUTHORITIES

2. Authority for the FBI to enter into this agreement can be found at Title 28, United States Code (U.S.C.), Section (§) 533; 42 U.S.C. § 3771; Title 28, Code of Federal Regulations (C.F.R.), § 0.85; and applicable United States Attorney General's Guidelines.

## PURPOSE

3. The purpose of this MOU is to delineate the responsibilities of Grand Rapids Resident Agency Violent Crimes/Fugitive Safe Streets Task Force (**SSTF**) personnel formalize relationships between participating agencies for policy guidance, planning, training, public and media relations; and maximize inter-agency cooperation. This MOU is not intended, and should not be construed, to create any right or benefit, substantive or procedural, enforceable at law or otherwise by any third party against the parties, the United States, or the officers, employees, agents, or other associated personnel thereof.

## MISSION

4. The mission of the SSTF is to identify and target for prosecution criminal enterprise groups and individuals responsible for crimes of violence such as bank robbery, Hobbs Act offenses, extortion, transportation crimes, special jurisdiction matters, and other violent incident crimes, as well as to focus on the apprehension of dangerous fugitives where there is or may be a federal investigative interest. The SSTF will enhance the effectiveness of federal/state/local law enforcement resources through a well-coordinated initiative seeking the most effective investigative/prosecutive avenues by which to convict and incarcerate dangerous offenders.

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000258

FOR OFFICIAL USE ONLY

## SUPERVISION AND CONTROL

### A. **Supervision**

5. Overall management of the SSTF shall be the shared responsibility of the participating agency heads and/or their designees.

6. The Special Agent in Charge (SAC) of the Detroit Division shall designate one Supervisory Special Agent (SSTF Supervisor) to supervise the SSTF. The SSTF Supervisor may designate a Special Agent to serve as the Safe Streets Task Force Coordinator (Task Force Coordinator). Either the SSTF Supervisor or the Task Force Coordinator shall oversee day-to-day operational and investigative matters pertaining to the SSTF.

7. Conduct undertaken outside the scope of an individual's SSTF duties and assignments under this MOU shall not fall within the oversight responsibility of the SSTF Supervisor or Task Force Coordinator. As stated in paragraph 74, below, neither the United States nor the FBI shall be responsible for such conduct.

8. SSTF personnel will be subject to the laws, regulations, policies, and personnel rules applicable to their respective agencies. FBI employees will continue to adhere to the Bureau's ethical standards, including Department of Justice (DOJ)/FBI regulations relating to outside employment and prepublication review matters, and will remain subject to the Supplemental Standards of Ethical conduct for employees of the DOJ.

9. SSTF personnel will continue to report to their respective agency heads for non-investigative administrative matters not detailed in this MOU.

10. Continued assignment of personnel to the SSTF will be based on performance and at the discretion of appropriate management. The FBI SAC and SSTF Supervisor will also retain discretion to remove any individual from the SSTF.

### B. **Case Assignments**

11. The FBI SSTF Supervisor will be responsible for opening, monitoring, directing, and closing SSTF investigations in accordance with existing FBI policy and the applicable United States Attorney General's Guidelines.

12. Assignments of cases to personnel will be based on, but not limited to, experience, training and performance, in addition to the discretion of the SSTF Supervisor.

13. For FBI administrative purposes, SSTF cases will be entered into the relevant FBI computer system.

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000259

FOR OFFICIAL USE ONLY

14. SSTF personnel will have equal responsibility for each case assigned. SSTF personnel will be responsible for complete investigation from predication to resolution.

C. **Resource Control**

15. The head of each participating agency shall determine the resources to be dedicated by that agency to the SSTF, including personnel, as well as the continued dedication of those resources. The participating agency head or designee shall be kept fully apprised of all investigative developments by his or her subordinates.

## OPERATIONS

A. **Investigative Exclusivity**

16. It is agreed that matters designated to be handled by the SSTF will not knowingly be subject to non-SSTF law enforcement efforts by any of the participating agencies. It is incumbent on each agency to make proper internal notification regarding the SSTF's existence and areas of concern.

17. It is agreed that there is to be no unilateral action taken on the part of the FBI or any participating agency relating to SSTF investigations or areas of concern as described in paragraph 3. All law enforcement actions will be coordinated and cooperatively carried out.

18. SSTF investigative leads outside of the geographic areas of responsibility for FBI Detroit Division will be communicated to other FBI offices for appropriate investigation.

B. **Confidential Human Sources**

19. The disclosure of FBI informants, or Confidential Human Sources (CHSs), to non-SSTF personnel will be limited to those situations where it is essential to the effective performance of the SSTF. These disclosures will be consistent with applicable FBI guidelines.

20. Non-FBI SSTF personnel may not make any further disclosure of the identity of an FBI CHS, including to other individuals assigned to the SSTF. No documents which identify, tend to identify, or may indirectly identify an FBI CHS may be released without prior FBI approval.

21. In those instances where a participating agency provides a CHS, the FBI may, at the discretion of the SAC, become solely responsible for the CHS's continued development, operation, and compliance with necessary administrative procedures regarding operation and payment as set forth by the FBI.

3
FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000260

FOR OFFICIAL USE ONLY

22. The United States Attorney General's Guidelines and FBI policy and procedure for operating FBI CHSs shall apply to all FBI CHSs opened and operated in furtherance of SSTF investigations. Documentation of, and any payments made to, FBI CHSs shall be in accordance with FBI policy and procedure.

23. Operation, documentation, and payment of any CHS opened and operated in furtherance of an SSTF investigation must be in accordance with the United States Attorney General's Guidelines, regardless of whether the handling agency is an FBI SSTF participating agency. Documentation of state, county, or local CHSs opened and operated in furtherance of SSTF investigations shall be maintained at an agreed upon location.

C. **Reports and Records**

24. All investigative reporting will be prepared in compliance with existing FBI policy. Subject to pertinent legal and/or policy restrictions, copies of pertinent documents created by SSTF personnel will be made available for inclusion in the respective investigative agencies' files as appropriate.

25. SSTF reports prepared in cases assigned to SSTF personnel will be maintained at an FBI approved location; original documents will be maintained by the FBI.

26. Records and reports generated in SSTF cases which are opened and assigned by the FBI SSA with designated oversight for investigative and personnel matters will be maintained in the FBI investigative file for SSTF.

27. SSTF investigative records maintained at the Detroit Field Office of the FBI will be available to all SSTF personnel, as well as their supervisory and command staff subject to pertinent legal, administrative and/or policy restrictions.

28. All evidence and original tape recordings (audio and video) acquired by the FBI during the course of the SSTF investigations will be maintained by the FBI. The FBI's rules and policies governing the submission, retrieval and chain of custody will be adhered to by SSTF personnel.

29. All SSTF investigative records will be maintained at an approved FBI location. Placement of all or part of said information into participating agency files rests with the discretion of supervisory personnel of the concerned agencies, subject to SSA approval.

30. Classified information and/or documents containing information that identifies or tends to identify an FBI CHS shall not be placed in the files of participating agencies unless appropriate FBI policy has been satisfied.

31. The Parties acknowledge that this MOU may provide SSTF personnel with access to information about U.S. persons which is protected by the Privacy Act of 1974 and/or

4

This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000261

FOR OFFICIAL USE ONLY

Executive Order 12333. The Parties expressly agree that all such information will be handled lawfully pursuant to the provisions thereof. The Parties further agree that if this access to information by SSTF personnel requires a change in privacy compliance documents, those changes will be accomplished prior to access being granted.

## INFORMATION SHARING

32. No information possessed by the FBI, to include information derived from informal communications between SSTF personnel and FBI employees not assigned to the SSTF, may be disseminated by SSTF personnel to non-SSTF personnel without the approval of the SSTF Supervisor and in accordance with the applicable laws and internal regulations, procedures or agreements between the FBI and the participating agencies that would permit the participating agencies to receive that information directly. Likewise, SSTF personnel will not provide any participating agency information to the FBI that is not otherwise available to it unless authorized by appropriate participating agency officials.

33. Each Party that discloses PII is responsible for making reasonable efforts to ensure that the information disclosed is accurate, complete, timely, and relevant.

34. The FBI is providing access to information from its records with the understanding that in the event the recipient becomes aware of any inaccuracies in the data, the recipient will promptly notify the FBI so that corrective action can be taken. Similarly, if the FBI becomes aware that information it has received pursuant to this MOU is inaccurate, it will notify the contributing Party so that corrective action can be taken.

35. Each Party is responsible for ensuring that information it discloses was not knowingly obtained or maintained in violation of any law or policy applicable to the disclosing Party, and that information is only made available to the receiving Party as may be permitted by laws, regulations, policies, or procedures applicable to the disclosing Party.

36. Each Party will immediately report to the other Party each instance in which data received from the other Party is used, disclosed, or accessed in an unauthorized manner (including any data losses or breaches).

37. The Parties agree that either or both may audit the handling and maintenance of data in electronic and paper recordkeeping systems to ensure that appropriate security and privacy protections are in place.

## PROSECUTIONS

38. SSTF investigative procedures, whenever practicable, are to conform to the requirements which would allow for either federal or state prosecution.

39. A determination will be made on a case-by-case basis whether the prosecution of SSTF cases will be at the state or federal level. This determination will be based on the

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000262

evidence obtained and a consideration of which level of prosecution would be of the greatest benefit to the overall objectives of the SSTF.

40. In the event that a state or local matter is developed that is outside the jurisdiction of the FBI or it is decided to prosecute a SSTF case at the state or local level, the FBI agrees to provide all relevant information to state and local authorities in accordance with all applicable legal limitations.

**A. Investigative Methods/Evidence**

41. For cases assigned to an FBI Special Agent or in which FBI CHSs are utilized, the parties agree to conform to federal standards concerning evidence collection, processing, storage, and electronic surveillance. However, in situations where the investigation will be prosecuted in the State Court where statutory or common law of the state is more restrictive than the comparable federal law, the investigative methods employed by FBI case agents shall conform to the requirements of such statutory or common law pending a decision as to venue for prosecution.

42. In all cases assigned to state, county, or local law enforcement participants, the parties agree to utilize federal standards pertaining to evidence handling and electronic surveillance activities as outlined in the Domestic Investigations and Operations Guide to the greatest extent possible. However, in situations where the statutory or common law of the state is more restrictive than the comparable federal law, the investigative methods employed by state and local law enforcement agencies shall conform to the requirements of such statutory or common law pending a decision as to venue for prosecution.

43. The use of other investigative methods (search warrants, interceptions of oral communications, etc.) and reporting procedures in connection therewith will be consistent with the policies and procedures of the FBI.

**B. Undercover Operations**

44. All SSTF undercover operations will be conducted and reviewed in accordance with FBI guidelines and the Attorney General's Guidelines on Federal Bureau of Investigation Undercover Operations. All participating agencies may be requested to enter into an additional agreement if an employee of the participating agency is assigned duties which require the officer to act in an undercover capacity.

**USE OF LESS-THAN-LETHAL-DEVICES**[1]

[1] Pursuant to Section VIII of the DOJ Less-Than-Lethal Devices Policy dated May 16, 2011, all state/local officers participating in joint task force operations must be made aware of and adhere to the policy and its limits on DOJ officers.

This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

45. The parent agency of each individual assigned to the SSTF will ensure that while the individual is participating in FBI-led task force operations in the capacity of a task force officer, task force member, or task force participant, the individual will carry only less-lethal devices that the parent agency has issued to the individual, and that the individual has been trained in accordance with the agency's policies and procedures.

46. The parent agency of each individual assigned to the SSTF will ensure that the agency's policies and procedures for use of any less-lethal device that will be carried by the task force officer, task force member, or task force participant are consistent with the DOJ policy statement on the Use of Less-Than-Lethal Devices.

## DEADLY FORCE AND SHOOTING INCIDENT POLICIES

47. SSTF personnel will follow their own agencies' policies concerning firearms discharge and use of deadly force.

## DEPUTATIONS

48. Local and state law enforcement personnel designated to the SSTF, subject to a limited background inquiry, may be sworn as federally deputized Special Deputy United States Marshals, with the FBI securing the required deputation authorization. These deputations should remain in effect throughout the tenure of each investigator's assignment to the SSTF or until the termination of the SSTF, whichever comes first.

49. Deputized SSTF personnel will be subject to the rules and regulations pertaining to such deputation. Administrative and personnel policies imposed by the participating agencies will not be voided by deputation of their respective personnel.

## VEHICLES

50. In furtherance of this MOU, employees of LEA may be permitted to drive FBI owned or leased vehicles for official SSTF business and only in accordance with applicable FBI rules and regulations, including those outlined in the FBI Government Vehicle Policy Directive (0430D) and the Government Vehicle Policy Implementation Guide (0430PG). The assignment of an FBI owned or leased vehicle to LEA SSTF personnel will require the execution of a separate Vehicle Use Agreement.

51. The participating agencies agree that FBI vehicles will not be used to transport passengers unrelated to SSTF business.

52. The FBI and the United States will not be responsible for any tortious act or omission on the part of LEA and/or its employees or for any liability resulting from the use of an FBI owned or leased vehicle utilized by LEA SSTF personnel, except where liability may fall

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000264

FOR OFFICIAL USE ONLY

under the provisions of the Federal Tort Claims Act (FTCA), as discussed in the Liability Section herein below.

53. The FBI and the United States shall not be responsible for any civil liability arising from the use of an FBI owned or leased vehicle by LEA task force personnel while engaged in any conduct other than their official duties and assignments under this MOU.

54. To the extent permitted by applicable law, LEA agrees to hold harmless the FBI and the United States, for any claim for property damage or personal injury arising from any use of an FBI owned or leased vehicle by LEA SSTF personnel which is outside the scope of their official duties and assignments under this MOU.

## SALARY/OVERTIME COMPENSATION

55. The FBI and LEA remain responsible for all personnel costs for their SSTF representatives, including salaries, overtime payments and fringe benefits consistent with their respective agency, except as described in paragraph 56 below.

56. Subject to funding availability and legislative authorization, the FBI will reimburse to LEA the cost of overtime worked by non-federal SSTF personnel assigned full-time to SSTF, provided overtime expenses were incurred as a result of SSTF-related duties, and subject to the provisions and limitations set forth in a separate Cost Reimbursement Agreement to be executed in conjunction with this MOU. A separate Cost Reimbursement Agreement must be executed between the FBI and LEA for full-time employee(s) assigned to SSTF, consistent with regulations and policy, prior to any reimbursement by the FBI. Otherwise, overtime shall be compensated in accordance with applicable LEA overtime provisions and shall be subject to the prior approval of appropriate personnel.

## PROPERTY AND EQUIPMENT

57. Property utilized by the SSTF in connection with authorized investigations and/or operations and in the custody and control and used at the direction of the SSTF, will be maintained in accordance with the policies and procedures of the agency supplying the equipment. Property damaged or destroyed which was utilized by SSTF in connection with authorized investigations and/or operations and is in the custody and control and used at the direction of SSTF, will be the financial responsibility of the agency supplying said property.

## FUNDING

58. This MOU is not an obligation or commitment of funds, nor a basis for transfer of funds, but rather is a basic statement of the understanding between the parties hereto of the tasks and methods for performing the tasks described herein. Unless otherwise agreed in writing, each party shall bear its own costs in relation to this MOU. Expenditures by

8

This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000265

FOR OFFICIAL USE ONLY

each party will be subject to its budgetary processes and to the availability of funds and resources pursuant to applicable laws, regulations, and policies. The parties expressly acknowledge that the above language in no way implies that Congress will appropriate funds for such expenditures.

## FORFEITURES

59. The FBI shall be responsible for processing assets seized for federal forfeiture in conjunction with SSTF operations.

60. Asset forfeitures will be conducted in accordance with federal law, and the rules and regulations set forth by the FBI and DOJ. Forfeitures attributable to SSTF investigations may be equitably shared with the agencies participating in the SSTF.

## DISPUTE RESOLUTION

61. In cases of overlapping jurisdiction, the participating agencies agree to work in concert to achieve the SSTF's objectives.

62. The participating agencies agree to attempt to resolve any disputes regarding jurisdiction, case assignments, workload, etc., at the field level first before referring the matter to supervisory personnel for resolution.

## MEDIA RELEASES

63. All media releases and statements will be mutually agreed upon and jointly handled according to FBI and participating agency guidelines.

64. Press releases will conform to DOJ Guidelines regarding press releases. No release will be issued without FBI final approval.

## SELECTION TO SSTF AND SECURITY CLEARANCES

65. If an LEA candidate for the SSTF will require a security clearance, he or she will be contacted by FBI security personnel to begin the background investigation process prior to the assigned start date.

66. If, for any reason, the FBI determines that an LEA candidate is not qualified or eligible to serve on the SSTF, the participating agency will be so advised and a request will be made for another candidate.

67. Upon being selected, each candidate will receive a comprehensive briefing on FBI field office security policies and procedures. During the briefing, each candidate will execute non-disclosure agreements (SF-312 and FD-868), as may be necessary or required by the FBI.

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000266

FOR OFFICIAL USE ONLY

68. Before receiving unescorted access to FBI space identified as an open storage facility, SSTF personnel will be required to obtain and maintain a "Top Secret" security clearance. SSTF personnel will not be allowed unescorted access to FBI space unless they have received a Top Secret security clearance.

69. Upon departure from the SSTF, each individual whose assignment to the SSTF is completed will be given a security debriefing and reminded of the provisions contained in the non-disclosure agreement to which he or she previously agreed.

## LIABILITY

70. The participating agencies acknowledge that this MOU does not alter the applicable law governing civil liability, if any, arising from the conduct of personnel assigned to the SSTF.

71. The participating agency shall immediately notify the FBI of any civil, administrative, or criminal claim, complaint, discovery request, or other request for information of which the agency receives notice, concerning or arising from the conduct of personnel assigned to the SSTF or otherwise relating to the SSTF. The participating agency acknowledges that financial and civil liability, if any and in accordance with applicable law, for the acts and omissions of each employee detailed to the SSTF remains vested with his or her employing agency. In the event that a civil claim or complaint is brought against a state or local officer assigned to the SSTF, the officer may request legal representation and/or defense by DOJ, under the circumstances and pursuant to the statutes and regulations identified below.

72. For the limited purpose of defending against a civil claim arising from alleged negligent or wrongful conduct under common law under the FTCA, 28 U.S.C. § 1346(b), and §§ 2671-2680: An individual assigned to the SSTF who is named as a defendant in a civil action as a result of or in connection with the performance of his or her official duties and assignments pursuant to this MOU may request to be certified by the Attorney General or his designee as having acted within the scope of federal employment at the time of the incident giving rise to the suit. 28 U.S.C. § 2679(d)(2). Upon such certification, the individual will be considered an "employee" of the United States government for the limited purpose of defending the civil claim under the FTCA, and the claim will proceed against the United States as sole defendant. 28 U.S.C. § 2679(d)(2). Once an individual is certified as an employee of the United States for purposes of the FTCA, the United States is substituted for the employee as the sole defendant with respect to any tort claims. Decisions regarding certification of employment under the FTCA are made on a case-by-case basis, and the FBI cannot guarantee such certification to any SSTF personnel.

73. For the limited purpose of defending against a civil claim arising from an alleged violation of the U.S. Constitution pursuant to 42 U.S.C. § 1983 or Bivens v. Six Unknown Named

10

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000267

FOR OFFICIAL USE ONLY

Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971): An individual assigned to the SSTF who is named as a defendant in a civil action as a result of or in connection with the performance of his or her official duties and assignments pursuant to this MOU may request individual-capacity representation by DOJ to defend against the claims. 28 C.F.R. §§ 50.15, 50.16. Any such request for individual-capacity representation must be made in the form of a letter from the individual defendant to the U.S. Attorney General. The letter should be provided to Chief Division Counsel (CDC) for the FBI Detroit Division, who will then coordinate the request with the FBI Office of the General Counsel. In the event of an adverse judgment against the individual, he or she may request indemnification from DOJ. 28 C.F.R. § 50.15(c)(4). Requests for DOJ representation and indemnification are determined by DOJ on a case-by-case basis. The FBI cannot guarantee the United States will provide legal representation or indemnification to any SSTF personnel.

74. Liability for any conduct by SSTF personnel undertaken outside of the scope of their assigned duties and responsibilities under this MOU shall not be the responsibility of the FBI or the United States and shall be the sole responsibility of the respective employee and/or agency involved.

## DURATION

75. The term of this MOU is for the duration of the SSTF's operations, contingent upon approval of necessary funding, but may be terminated at any time upon written mutual consent of the agency involved.

76. Any participating agency may withdraw from the SSTF at any time by written notification to the SSA with designated oversight for investigative and personnel matters or program manager of the SSTF at least 30 days prior to withdrawal.

77. Upon termination of this MOU, all equipment provided to the SSTF will be returned to the supplying agency/agencies. In addition, when an entity withdraws from the MOU, the entity will return equipment to the supplying agency/agencies. Similarly, remaining agencies will return to a withdrawing agency any unexpended equipment supplied by the withdrawing agency during any SSTF participation.

## MODIFICATIONS

78. This agreement may be modified at any time by written consent of all involved agencies.

79. Modifications to this MOU shall have no force and effect unless such modifications are reduced to writing and signed by an authorized representative of each participating agency.

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000268

FOR OFFICIAL USE ONLY

**SIGNATORIES**

Special Agent in Charge
Federal Bureau of Investigation

6-25-2013

Date

Chief/Sheriff
Law Enforcement Agency

6-21-2013

Date

FOR OFFICIAL USE ONLY
This document is the property of the FBI and is loaned to your agency.
Neither it nor its contents may be released without authorization by FBI Headquarters.

KING-000269